# IN THE COURT OF APPEALS OF IOWA

———————————

No. 25-1430
Filed March 11, 2026

———————————

**In the Interest of N.P., Minor Child,**

**L.F., Mother,**
Appellant.

———————————

Appeal from the Iowa District Court for Scott County,
The Honorable Korie Talkington, Judge.

———————————

**AFFIRMED**

———————————

G. Brian Weiler, Davenport, attorney for appellant mother.

Brenna Bird, Attorney General, and Mackenzie Moran,
Assistant Attorney General, attorneys for appellee State.

Christine Frederick, Davenport, attorney and
guardian ad litem for minor child.

———————————

Considered without oral argument
by Tabor, C.J., and Badding and Langholz, JJ.
Opinion by Badding, J.

**BADDING, Judge.**

A mother appeals the termination of her parental rights to one child—born in 2024—under paragraphs (d), (e), (h), (i), and (*l*) of Iowa Code section 232.116(1) (2025).[1] She challenges the juvenile court's finding that the Iowa Department of Health and Human Services made reasonable efforts to reunify her with the child. Reviewing de novo, *see In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019), we affirm.

## I. Background

This family first came to the attention of the department in May 2024 after a domestic altercation that put the child in harm's way. An investigation into that incident raised additional concerns about the parents' substance use. Although a hair test from the mother came back positive for methamphetamine, the child was allowed to remain in her custody under a safety plan. Soon, however, the mother's compliance began to slip, and service providers reported new worries about conditions in the home. In August 2024, the child was removed.

Over the next six months, the mother failed to participate in more than ten drug tests requested by the department. The only one she completed—a sweat patch in October—was positive for methamphetamine. In March 2025, the mother entered an inpatient treatment program. She maintained her sobriety while there and was successfully discharged three months later. But once she was out of that structured program, the mother failed to consistently participate in outpatient services. And a sweat patch applied in

---

[1] The juvenile court also terminated the parental rights of the child's putative father, who does not appeal.

June—days after she left her treatment facility—tested positive for methamphetamine.

Adamant that she had not used methamphetamine for nearly three years (despite her other positive tests), the mother asked to be tested again. She suggested a hair sample would show that the result from her June sweat patch was incorrect. The case manager rejected that idea, reasoning the mother's recent sweat patch all but guaranteed a positive hair test "because the hair [test] goes back three months." Instead, the department scheduled the mother for an oral test, which came back negative for all substances. All parties now agree that this test neither refutes nor corroborates the mother's claims of longstanding sobriety, as methamphetamine can only be detected in oral fluid for a few days after use.

At the termination hearing in August, the mother claimed the department failed to make reasonable efforts toward reunification. She argued that her June sweat patch was a "critical piece of evidence" and that the department "should have provided a hair test" to confirm or deny the positive result. The juvenile court agreed that "another patch or a hair stat would have been a heck of a lot more helpful to everyone." Yet it found the department's "lack of understanding regarding the limitations of different types of drug tests" did not amount to a failure of reasonable efforts. Noting the mother had "failed to demonstrate a sustained period of sobriety," the court terminated her parental rights.

The mother now appeals, repeating her reasonable-efforts argument.

## II. Reasonable Efforts

After removing a child from parental custody, the department must "make every reasonable effort to return the child to the child's home." Iowa

Code § 232.102(6).  While compliance with this mandate "is not viewed as a strict substantive requirement" for termination of parental rights, "the State must show reasonable efforts as a part of its ultimate proof the child cannot be safely returned to the care of a parent."  *L.T.*, 924 N.W.2d at 527 (cleaned up); *cf. In re F.W.*, No. 24-0111, 2024 WL 2044610, at *5 (Iowa Ct. App. May 8, 2024) (Tabor, J., concurring specially) (questioning why reasonable efforts are not a "strict substantive requirement" for termination when section 232.102(4)(b) requires such efforts in every case unless waived).  The sole question in this appeal is whether reasonable efforts are lacking where the department declines to provide a confirmatory drug test to resolve a parent's dispute about prior results.[2]

Just what measures are encompassed by the reasonable-efforts requirement depends on the circumstances of each case.  *In re S.J.*, 620 N.W.2d 522, 525 (Iowa Ct. App. 2000); *see also* Iowa Code § 232.102A(1)(a)(1) (stating courts shall consider the "type, duration, and

---

[2] The State contends the mother waived her reasonable-efforts challenge by raising it for the first time at the termination hearing.  At that point, an objection to the adequacy of services is often too late.  *See, e.g.*, *In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002).  But here, the termination hearing took place only a few weeks after the mother requested a hair test and—more importantly—within the ninety-day window during which the result of the mother's June sweat patch could have been confirmed or refuted.  *See In re L.M.*, 904 N.W.2d 835, 840 (Iowa 2017) (explaining a challenge to services must be raised at a time when appropriate changes can be made).  The mother's objection was timely.

We likewise reject the State's assertion that the mother waived her claim by failing to provide legal authority and factual analysis in her succinct petition on appeal.  Although a closer call, we find the mother has adequately presented the issue she asks us to review. *Cf. In re S.H.*, No. 24-1650, 2025 WL 547802, at *3 (Iowa Ct. App. Feb. 19, 2025) (finding a mother's reasonable-efforts challenge waived on appeal where she failed to "specify what services or support were missing at the time of the termination hearing").  We therefore proceed to the merits.

intensity of services or support offered" to the child and parents in reviewing reasonable efforts). Our court has often listed drug testing among the services at the department's disposal. *See, e.g.*, *In re L.L.*, No. 25-0396, 2025 WL 2538870, at *4 (Iowa Ct. App. Sep. 4, 2025); *In re R.G.*, No. 25-0530, 2025 WL 1704721, at *4 (Iowa Ct. App. June 18, 2025); *In re A.S.*, No. 25-0298, 2025 WL 1323726, at *3 (Iowa Ct. App. May 7, 2025). And in one case cited by the mother, we suggested the department failed to make reasonable efforts when it did not arrange drug tests that might have resolved a dispute about the accuracy of prior results. *See In re A.D.*, No. 24-0232, 2024 WL 2045988, at *8 (Iowa Ct. App. May 8, 2024).

But context matters. In *A.D.*, a father facing termination alleged that his mental health medication had caused a pair of sweat patches to show false positives for methamphetamine. *Id.* at *4. The juvenile court continued the termination hearing and ordered the department to provide a hair test, which returned a negative result. *Id.* Despite this initial support for the father's claim—and notwithstanding the juvenile court's order to "continue to do all the tests"—the department offered no further hair testing. *Id.* at *8. Instead, it asked the father to wear additional sweat patches, which later tested positive for methamphetamine. *Id.* at *4. We criticized the department's approach, explaining the failure to perform further hair testing "precluded the court and parties from obtaining a more accurate picture of the situation." *Id.* at *8. When a juvenile court orders additional testing to ferret out faulty results, we expect the department to comply.

This case presents a different factual backdrop. Unlike the father in *A.D.*, the mother offered no reason to doubt the accuracy of her sweat patch result. She simply alleged that she "knew it was false because [she] knew [she] hadn't relapsed." The case manager declined to credit that story—and

reasonably so. The positive sweat patch was consistent with the mother's two prior positive results, one of which came from a hair sample. She had missed more than ten other tests during the case. *See In re L.A.*, 20 N.W.3d 529, 533 (Iowa Ct. App. 2025) (noting the presumption that "missed tests for which no legitimate excuse existed would have been positive for illegal substances"). And her participation in outpatient treatment services had started to falter. In other words, all signs pointed to relapse. There was no basis for the department to question the results of the June sweat patch. Arranging a confirmatory test at the mother's request was not a reasonable-efforts requirement under the circumstances present here.

The ultimate focus of our reasonable-efforts review is on "the services provided by the state," not on the services a parent claims the department failed to provide. *In re C.B.*, 611 N.W.2d 489, 494 (Iowa 2000). Looking to that bigger picture, we find the department satisfied its duty to facilitate reunification. During the twelve-month period after the child's removal, the department offered the mother mental health therapy, inpatient and outpatient substance-use treatment, regular drug testing opportunities, housing assistance at a sober-living facility, and family preservation services, among other things. Many of these services were tailored to address the substance-use problem that prevented the child's safe return. Although the mother regrettably failed to overcome that barrier, we agree with the juvenile court that it was not for lack of assistance by the department.

Because the mother raises no other challenge to the juvenile court's findings, we affirm the termination of her parental rights.

**AFFIRMED.**

6